May it please the Court, I am Dave Domina here on behalf of Jerry Maguire, whose bankruptcy case is a related case and not a core proceeding connected with his bankruptcy. The supplemental brief we filed is in error on that point. It calls it a core proceeding. That's not correct. Your Honors, we're here on appeal pursuant to 28 U.S.C. section 1291. We are not in the claims court under section 1295, as the government contends we should be, because jurisdiction was invoked in the bankruptcy court proceeding in this related case. Wouldn't that require us to resolve the question that the Federal Circuit has addressed? I think it does require that you resolve that issue because you must determine your own jurisdiction, Your Honor. And so the issue here really is whether, in this circumstance where two separate Federal statutes each confer exclusive jurisdiction on a different court over the same dispute, what is the method we should use to reconcile those statutes? Can they be reconciled and what's the appropriate outcome? In order for you to get jurisdiction in the bankruptcy court, you not only have to find the jurisdictional provision, but you have to find a waiver of sovereign immunity. And you're borrowing that waiver from the Tucker Act? We're borrowing it from section 1491, the Tucker Act. The Tucker Act, right. The irony there, and I realize this has been addressed in the Federal Circuit's decision, is that 1491 at the same time appears to confer exclusive jurisdiction on the court of Federal claims. It does. That's correct. It definitely does two things. It definitely waived sovereign immunity and it conferred jurisdiction on the claims court. And, of course, nearly 100 years later, Congress came along with the Bankruptcy Act and gave us section 1334B, which says, notwithstanding any other Federal statute conferring exclusive jurisdiction on a different Federal court, a related case in bankruptcy belongs to the bankruptcy court. Now, I certainly believe you as to the exclusive jurisdiction, but you still have the question of the waiver of sovereign immunity. We do, and there are cases. There are a number of cases, as your question infers, Your Honor, which say that those two things must be found in tandem in a statute. We must find both the waiver of sovereign immunity and the authority to exercise jurisdiction in the same statute. I think that's the point of departure between us and the United States here. And I think we're right, the United States is wrong, for several reasons, but the most direct reason is expressed by the Supreme Court in United States v. Mitchell, where the Supreme Court said that it's not necessary that a single statute contain both components. And the United States Supreme Court said in the Franchise Tax Board case that it's not a ritualistic formula that we should be looking for when we seek the answers to the two questions, has sovereign immunity been waived and where should jurisdiction be exercised? Can you explain something to me, and I apologize in advance if I'm missing something. But this started in the bankruptcy court, correct? It did, Your Honor. The nature of this type of bankruptcy proceeding required the bankruptcy court to make findings, and then that had to be passed on to the district court for final resolution. That's correct. Well, could you go, do you have a choice of going to the district court after you got the bankruptcy court's findings or to the court, Federal Court of Claims? I don't think we had a choice at that point, Your Honor. I think you did have a choice earlier, perhaps. We may have had a choice. In other words, couldn't I, just to follow up, because then you're dealing with an appeal, I gather, from the bankruptcy court decision that either had to go to the district court or the BAP if you consented, Bankruptcy Appellate Panel. Am I wrong on that? Because this was a related case, and we litigated whether it was a core proceeding or a related case. So reference was withdrawn and then re-referenced or something? Is that it? Well, what happened was that we filed it and took the position it was a core proceeding. The bankruptcy judge decided it was a related case. We actually had an appeal to the district court, not the BAP on this jurisdiction issue, went back down, tried the case to the bankruptcy judge, who then determined that because it was a related case, she could only make recommendations to the district court, not the BAP. And so our appeal is directly from the district court as a result of that. Well, going back in time, and just because I think it may help me with the jurisdictional issue, of course, when you have a related case, you can proceed on a variety of different grounds. For example, the authority could be granted by the bankruptcy court to proceed in state court under some circumstances. In other words, the trustee or the debtor would be authorized to pursue the case in state court. If you want a jury trial, sometimes the reference is withdrawn and the case is tried in federal court. I assume from your answers that you believe there was a potential remedy in asking the bankruptcy court to authorize the filing of a suit in the Court of Federal Claims. Is that true? Not that you necessarily had to, but that was an option. We thought, Your Honor, when we filed this lawsuit, that Section 1334B trumped the Tucker Act. Our position at that time was, and frankly continues to be, although we don't think it's necessary for us to win, that the bankruptcy court's exclusive jurisdiction does in fact make that decision for us and trumps the Tucker Act, so we had no choice about where to bring this case. And we thought that was so because we thought that the underlying congressional policy of keeping all bankruptcy-related litigation in one place so that a debtor can be reorganized trumped what we perceived as the congressional policy of keeping Tucker Act-type claims in one court. Although, really, it happens all the time in bankruptcy court that the bankruptcy court will authorize the trustee or debtor to proceed with a suit that may result in a recovery to the estate outside the context of bankruptcy. I mean, a tort case can be tried in state court and should be appropriately tried in state court if it states a claim. Or a child support issue or something like that, sure. So why wouldn't the same principle apply to a Tucker Act case? I understand your rationale, but, I mean, if that's true, why couldn't you go to the bankruptcy judge and get just the authority to proceed in the court of federal claims? I don't know of a provision in the Act that would permit us to do that, frankly, is my answer. From a policy standpoint, I don't see anything wrong with it, could evaluate the potential Tucker Act claim and say it's sufficiently unrelated to the rest of the bankruptcy proceeding that I don't need control of it to reorganize the debtor. Right, and then direct that the proceeds from the lawsuit be paid into the bankruptcy estate. That would be the normal course. The reason I ask that is because if that's true, then really the waiver of sovereign immunity doesn't particularly matter because the bankruptcy court would have the power to transfer the case to the appropriate court and retain jurisdiction over the proceeds anyway. Well, that logic certainly supports our position that 1591 is a waiver of sovereign immunity that can be borrowed by the bankruptcy courts and coupled with their Section 1334B jurisdiction. Okay. I don't understand your answer to Judge Thomas's question, because I thought Judge Thomas was suggesting that the bankruptcy court would then refer it over to the Court of Federal Claims, which clearly would have jurisdiction of the Tucker Act and for which there is a waiver of sovereign immunity. And then the proceeds from any – any proceeds from that proceeding could then simply be paid to the estate. And then I understand your answer to say, well, yes, we still have a waiver of sovereign immunity from the Tucker Act, but you're arguing then that the bankruptcy court should simply keep the matter. So I don't understand your answer. I don't understand how it was responsive to Judge Thomas's question. Well, I see. I see. I now understand where you think my disconnect was, and I'm going to try again. It seems to me that the power to make the decision where should this case be maintained is a jurisdictional power. And in order to reach the conclusion that the bankruptcy court can choose, we'll keep it or we'll send it over, means the bankruptcy court has jurisdiction. That's step one. Clearly the bankruptcy court could only keep it if your theory about the interplay between 1334 and the Tucker Act is correct. And so then step two would be, does the bankruptcy court have the power to tell the debtor, I'll allow you to keep this claim and bring this claim, but only if you file it in the Court of Federal Claims. And our answer to that is no, because Section 1334B would be vitiated by that outcome. Why would it be? Why would it be? It would be because, Your Honor, the language of Congress really is very explicit. It says, notwithstanding any other statute conferring exclusive jurisdiction. And certainly there is another statute nearly 100 years older than the Bankruptcy Act that did confer exclusive jurisdiction. And Congress was aware of that when the Bankruptcy Act was adopted because, in fact, in Section 106 of the Act, as the government argues, there are waivers of immunity that refer to it the Little Tucker Act. So Congress chose in the Bankruptcy Code to deal with the Little Tucker Act and handling jurisdictional matters. It's pretty clear that jurisdiction under the Little Tucker Act is not exclusive. I agree with that, Your Honor. Of course, that's absolutely true. But I think that the logical inference that comes from the decision Congress made in adopting the Bankruptcy Act to deal with the Little Tucker Act in Section 106 and not deal with the Tucker Act, Section 1491, must be that Congress intended to sweep it up into the notwithstanding any other statute conferring exclusive jurisdiction language. So we think we made the right decision when we filed the lawsuit. We thought it was a core proceeding, but it doesn't make any difference for the purpose we're discussing today, whether it's a core or a related proceeding, because the Bankruptcy Act has exclusive jurisdiction under it, under Title XI. Now, I think that it's important that we talk about policy, because I think you really have to make a judgment here that turns on plumbing the policy behind these two statutes. Clearly, the policy of sweeping all of the litigation affecting a debtor in bankruptcy into the bankruptcy court is to assist in giving the bankruptcy debtor the necessary protection to deal with creditors or reorganize. It's a very case-specific, individual citizen-specific policy. The Tucker Act's policy of creating a specialized court to deal with claims against the United States is an important public administrative policy. It's not citizen-specific. It deals with the machinery of government. How will the machinery of government function most efficiently? We don't think there's anything in the history of the Bankruptcy Act anywhere that we could find that suggests that the citizen-specific policy of the Bankruptcy Act is to yield to the machinery of governments and its operations policy expressed in the Tucker Act. And, in fact, we think that this pairing out of little versus big, Tucker, in Section 106 supports our position. Let me ask you this. I mean, it's obviously a very compelling and an interesting issue when you do the sovereign immunity issue from the jurisdictional point of view, but could we not also opt to decide this case based upon the rightness doctrine? Isn't that also an alternative jurisdictional argument that we can embrace from a prudential point of view? You can decide it there and deduct the rest of this issue if you decide that we're correctly here under Section 1291. Well, why is the case ripe? I mean, it is a – arguably, there was a process – well, let's take the government's argument. If the government is correct that there was a process, administrative process, to get Then is the case – why is the case ripe? Well, Your Honor, of course, that's a fact issue, and we have to look at what's in the record on that point. We concede that there are regulations in the Code of Federal Regulations about how to apply for permission to build a bridge from a road across a canal to a farm that's rented to a citizen and is Federal land. We contend that we complied with that policy, and we contend that our evidence is not only more compelling than the other side's evidence but is essentially uncontroverted. The farmer here, Mr. McGuire, was expressly told what to do and how to do it. He was offered no form, no procedure, no filing office, no location at which to see He was referred to the specific section of the – of the Code. That's correct, Your Honor. And he didn't – he never – we don't have any evidence that he ever made a phone call. We don't have any evidence that he ever sent a letter. If there isn't a form, then he might have made some kind of an inquiry that said, I'd like to rebuild this bridge. Who do I need to talk to? Your Honor, we do have evidence of those things in his testimony, and we have some admissions of that in the testimony of Mr. Onspach, the government agent. Mr. McGuire was told by Mr. Onspach with whom he should speak. That person was identified. There's evidence in the record of multiple conversations. There's evidence of the submission by Mr. McGuire of a drawing containing crude, but nonetheless sufficient for this purpose, we believe, plans and specifications for this relatively short bridge. We do not have that drawing. We don't know where it is. And there is evidence that that information was reported to Mr. Onspach, who did not act upon it. I think the rightness issue that comes out of those facts is that we have no denial of the application. And that's the point upon which the district judge found against us on the rightness issue. Not that we hadn't done those things, but that we didn't get a decision. He also thought that the evidence on the points I've just covered was more controverted than we would believe should have been his conclusion from the record. So basically, the way you read the record, that it's not a failure to exhaust, it's a failure of the agency at this point to have given a decision, and therefore he thinks it's not right because the agency hasn't responded? The district judge definitely found against us on that point. And I think that was the key point in his decision on the rightness issue. And our position on that, Your Honors, is that we had these conversations, submitted this drawing, requested permission to rebuild the bridge, and that that took us more than two entire farming seasons, or pardon me, parts of two entire farming seasons. We have a 10-year lease. That means 20 percent of the lease is destroyed by the government's unexplained delay in responding to our request. Well, could the government, just one second, could the government now issue a response to the permit? Do you think it's still pending there? I don't know whether it's pending or not, but it doesn't matter now because we know we've lost the lease. Both of the other questions. Yes, Your Honor. Under the regulations, the structures will be constructed and maintained under replicable permits on proper forms issued by the officer in charge. And I know that you complained that you never got those forms. Do you have any evidence that your client requested them? We do. We have, again, the evidence that he went to the office, asked how to get permission to build a bridge, was told there is no form. I think that's an uncontroverted fact here, that there was no form in existence. He was referred to an individual whose name I do not recall at the moment, but that name is uncontroverted in the record. He approached that person on at least two occasions, and I believe more, submitted the drawings to him, and the matter simply died, though he continued to inquire. He also did some other things that are, frankly, often a different direction from that, and the government points those out in its brief. And that is that he contacted a local lawyer who began to write letters, and there are a couple of those in the record, Exhibits 30 and 31, I believe, that described demands to have the bridge put back in. He attempted to enlist the assistance of the tribe and the tribal council to persuade the BIA to help him put the bridge back in. And all of that evidence buttresses our contention that he made duly diligent efforts to comply with what he was told to comply with, and that was see Johnson or whoever Johnson is, and deal with him about how to get the bridge built up, and it will be Mr. Anspach's ultimate issue to decide. No ultimate decision was ever made. I have to say, the disparity between how much Mr. McGuire was obligated to pay each year in lease payments and how much he was going to lose over the course of this $5,000 with $236,000, whatever it was, a year in lease payments, that if I had been Mr. McGuire, I would have been down there every day pounding on that door saying, where's the form, what do I do, who do I have to talk to? But we don't have any correspondence here. If you went to a local lawyer, is there any correspondence between the lawyer and the BIA here? How about the tribe and the BIA? I see that he filed a lawsuit with the tribe, but this was, I mean, tribal jurisdiction, you know, going to the tribe and suing the BIA in a tribal court doesn't sound like a very profitable enterprise to me. The letters from the local lawyer are either Exhibits 28 and 30 or Exhibits 30 and 31. I don't recall the numbers. The letters are in the excerpts of record? Yes, they are, Your Honor. The exhibits are 1 through 28 and 30 through 44, if I recall the number, and they are in the 28, 30, 31 series. The letters from the tribe to the BIA written on behalf of Mr. McGuire are also numbered after Exhibit No. 30, and I'm sorry I don't recall the exact numbers. So I can, while the letters from the local lawyer did not pursue this matter in precisely the way we are discussing today, what's the permit requirement? What must I submit to you? It is clear that Mr. McGuire, a farmer, was attempting to do his best, trying to elicit the assistance of a professional person and approach this problem appropriately. And I don't really think there's any denial at all that the government knew he wanted and needed the bridge back and made that need prominent and well-known, if not on a daily basis, on a very recurrent basis. He really thought that the door of the local BIA office was slammed closed to him, Your ways that perhaps lay people would be expected to do to open those doors. He used a local lawyer. He tried to use his friends on the local tribal council who would get the benefit of the revenue from the land. And it is a tragic disparity that a $5,000 bridge destroys a 10-year, 1,300-acre, very, very valuable alfalfa lease. But unfortunately, it's for one of the nail the horse was lost here. Are you arguing basically the futility doctrine, that it was futile for him to do anything beyond these informal conversations and not to structure a meaningful proposal and file it someplace? I think futility, Your Honor, is our weakest argument on the ripeness doctrine. We made it. I'll stand on it. But it's not our best argument. It's our third best argument. Are you saying that he did satisfy the Williamson Planning Commission requirements? There was a meaningful application that was made and that wasn't acted upon. And the basis for that are all these informal conversations that you allege that you can factually establish. We think they are established in the record. We recognize what your standard of review is, and we know that there is a denial of a portion of that process by Mr. Ansbach. So I must concede that there is some factual dispute, and I'm not representing the record that I've described for you, as being wholly one-sided. It's compellingly one-sided. How do we resolve that factual dispute here? You can't, of course. I recognize that. What I would say to you is that the government's evidence on that point does not reach the efforts below Mr. Ansbach. And therefore, all Mr. Ansbach brings to that is his own unawareness and a lack of explanation for his own inactivity. The removal of this bridge, if it was, in fact, removed for safety and not for some unarticulated spite reason, a connection being absent, much as was the case in your employment argument a little while ago, if it was removed for safety reasons, which were the articulated reasons, that means the government had a legitimate interest in having a safe bridge, and a safe bridge replaced to service a valuable lease of government land for the benefit of the Indians. There is no evidence the government put it back in, and that unexplained deficiency in the record also cuts our way on the issue of resolve. The bridge was put back in after the lease was forfeited and then left to somebody else. That's correct. Is there an underlying story here to all of this that is not in the record that we need to know about, or is there something here? There is an underlying story. I do not think it's one you need to know about because it's suspicion. I'd be happy to share it with you, but let me say this. Most of the disputes I suspect that reach you start with some sort of personal slight. That personal slight doesn't justify the legal problem that unfolds as a result. When the person slighted is a public official doing public service, the slight ought to be swallowed more effectively than to put the citizen out of business. Thank you very much. Thank you, counsel. We'll hear from the government. May it please the Court. Katherine Barton for the United States. With me at counsel table is Richard Patrick, who has handled the case prior to the appeal, and who I will call on if you ask me any bankruptcy questions. I was going to start with one, but go ahead. Starting with the question of the waiver of sovereign immunity, the strict construction rule of sovereign immunity survives and applies in this case. It's not a question of congressional policy. Let me ask you this, though, as a matter of practical application. How would Mr. Maguire get to the Court of Federal Claims except through the bankruptcy court? Your Honor, there's he could I don't actually know the procedure for that. He could file in bankruptcy. We would move to dismiss. The other side could move to transfer to the Court of Federal Claims. That claim can be dealt with separately in the Court of Federal Claims. Well, he wouldn't have standing to make any independent filing in the Court of Federal Claims. When a bankruptcy petition is filed, all right, title and interest goes to the estate, and the debtors can be the management of the estate or the trustee in certain cases. But nobody can file a suit except by getting permission of the bankruptcy court. So if he had gone to the Court of Federal Claims, as you suggest, he should have done, he would have likely been thrown out for lack of standing. Okay. So I don't know the answer to that question, except he could have brought the claim long before he went into bankruptcy court. Yeah, but he didn't. So here we are. Well, he was. If you accept that. Just let me play this out for a minute because then you can answer it. If we accept that as a fact, that he had to go to bankruptcy court in any event to get either permission to go to the Court of Federal Claims or to pursue this claim, there had to be an exercise of bankruptcy power. And with the exercise of bankruptcy power, if that exercise involved transferring it, why isn't there a waiver of sovereign immunity implicit in that? Because you know that the bankruptcy court could exercise the power to transfer it. Well, it would have to transfer for lack of jurisdiction. No, there's a difference. Let me explain. No, but that would be our position. The difference is this. The bankruptcy court would have to keep some control over that litigation because the bankruptcy estate would have the ownership of the litigation. You can't, it cannot be prosecuted outside the scope of the bankruptcy. So given that you have the exercise of bankruptcy power in the first place as a predicate to filing the suit and the bankruptcy court, I think, had the power to transfer the suit, keeping jurisdiction over the proceeds, why does that make it sort of irrelevant to the question of waiver of sovereign immunity? I mean, you're saying it's not freestanding. Well, first of all, I mean, it is. I know you're mixing apples and oranges, but maybe you can persuade me. Well, I guess one is I have, the waiver can only be to the extent that Congress authorized it. So I have one argument that is sort of, it doesn't really matter. I mean, and I forgot what my other. I mean, it really, I don't know what the procedure would be, but the trans, I mean, oh, I know, that there are reasons to have it. You said it didn't matter. I mean, it matters because the United States has only consented to be sued in the Court of Claims, the Court of Federal Claims, which has the expertise over these kinds of cases, and for all those claims on appeal to go to the federal circuit. Right, but the federal circuit says there's concurrent jurisdiction under these circumstances, which I may or may not agree with their decision, but why would we want to, I mean, engage in a conflict with the federal circuit on a question that's within their expertise? We're smarter than they are about, you know. I think this Court should be able to say what jurisdiction the courts in the Ninth Circuit have. The federal circuit certainly should say that the Court of Claims does have jurisdiction, but I don't think it's its role to say what other courts in the country have jurisdiction under other circuits. I mean, then we end up with these cases here in this sort of bizarre situation that shouldn't even be here. But let me go to, I mean, to look at a waiver that came from the mid-19th century and talk about whether it makes sense in the context of the Bankruptcy Act today. I mean, really, we have to look at the language of the Waiver of Sovereign Immunity in the Tucker Act. Nobody contends that the waiver comes from the Bankruptcy Code, and the waiver by its terms applies only to the Court of Federal Claims. Now, everybody agrees that the Tucker Act limits jurisdiction for claims in this amount, taking claims to the Court of Federal Claims. It's the exact same language that provides the waiver. There is no basis for finding a broader waiver of sovereign immunity in that language than there is for the jurisdictional determination of the Tucker Act. So if you want, what you would like us to do is to transfer this case to the Court of Federal Claims and start all over again, right? We would like you to remand to the district court for determination of whether transfer is appropriate. Why shouldn't we transfer it? Excuse me? Why shouldn't we? We do this quite often, to transfer directly. Why shouldn't we just transfer it directly if we think that there's a ‑‑ because I don't see how you get, you can't, we can't, in my view, we can't say instruct them to dismiss this and have Mr. McGuire refile there because Mr. McGuire has no standing to file that. It would be a derogation of what the Bankruptcy Court was doing. What we would have to do is to say, all right, we concede with the government that this type of suit has to be brought in the Court of Federal Claims, but it can only be brought in this instance through the exercise of the power of the Bankruptcy Court, and therefore we transfer it over there. So at the end of the day, you want to start all over again back in D.C. Even though you won at the district court. The principle is important for us here not to have these cases litigated in the Bankruptcy Court here and handled this way. So it is, I mean, for us to subject ourselves to the United States to suit is the fundamental principle that we care about here, and even though we have a particular case, that we have won, and it is true. None of us are looking forward to continuing with it. Counsel, the Federal Circuit's decision is called quality tooling. Are there any other decisions other than quality tooling? No. Not in support. I think in support of quality tooling. Or in derogation of quality tooling. Is there anything else other than quality tooling on point here? There is the Henry Carrington Gardens bankruptcy case that was in the Fourth Circuit, which rejected the rationale of quality tooling. Is it a Fourth Circuit case? Is it a Fourth Circuit case? Was it a bankruptcy case? It's a bankruptcy court case. It's a bankruptcy decision that disagrees with quality tooling. Right. Right. But the fact of the matter is, for us, if we issue a decision along the lines you'd like us to, you put a square link, we create an inter-circuit conflict with the Federal Circuit, and I'm assuming that Mr. Guire is going to say to the Supreme Court, well, this is an important issue, you better take it up. That's one of the reasons we try to avoid inter-circuit conflicts when we can. I understand that. First of all, whether it would go up, I'm not sure, since Mr. McGuire didn't even file a reply brief on this point until the court asked him to file a supplemental brief responding to our jurisdictional argument here. So I don't know how interested they are in pursuing that. But you understand our concern, and generally speaking, that we try to avoid inter-circuit conflicts, or take a deep breath before we do that if we can. I do, Your Honor, but quality tooling is very poorly reasoned. It is not a correct case. There was this very vigorous dissent by Judge Schall and three denials, three dissents from the denial of the government's petition for rehearing en banc in that case, including Judge Schall and two other judges. Well, by the way, we avoid all this problem by just addressing the ripeness issue. Isn't that an alternative jurisdictional ground that we can reach for? Yes, it is. We believe it is an alternative jurisdictional ground provides for dismissal here. But we do feel like for two reasons. One is that this kind of case is just going to come up again. Here you're fortunate to have. It has to go via the bankruptcy court. How often does this happen realistically where you're so worried it's going to happen over and over again? It's been 12 years since quality tooling, and we apparently don't have anything except for a bankruptcy decision out of the Fourth Circuit, so. It happens occasionally, but it's not very often. I mean, for us, any time it happens, it matters, because we should be in the Court of Claims and in the Federal Circuit. And also, even really. I've got to say what happened. The case I was involved in where this happened, they got to the Court of Federal Claims, and the government took the position that it ought to be back in the district court and bankruptcy court, and we got out there. And, you know, you get a different lawyer who says, ah, not our jurisdictional problem, citing quality tools and so forth. Counsel, I'm just thinking out loud here. If we were to decide this contrary to quality tooling, you would have no choice but to take this to the Supreme Court, since the Court of Federal Claims is likely to reject its jurisdiction, isn't it? Isn't the Court of Federal Claims likely to say, we are bound by quality tooling because that is our court of appeals decision, and therefore there is exclusive jurisdiction in the bankruptcy court, notwithstanding the decision by the Ninth Circuit. Excuse me, Your Honor. Quality tooling says there's concurrent jurisdiction with the Federal Circuit, the Court of Federal Claims. Oh, I'm sorry. Or bankruptcy. So certainly it can be in the Court of Federal Claims. Okay. All right. And that's why I was saying that for the Federal Circuit to say that it might be one thing if the Federal Circuit had said in quality tooling that it did not, that the Court of Claims did not have jurisdiction, then I would say, yes, maybe this court needs to, maybe the Federal Circuit has authority to talk about that sort of thing more than this court. But what quality tooling says is we have it, but everybody else has it, too. And I, and it's our position that it's really the other courts of, No, we don't. Thank you very much. Appellate courts to say whether they have that jurisdiction. If you don't mind, let's get back to Judge Block's question, because I think it's an important one. And it seems to me we probably have to resolve rightness before we do anything else. I know you'd like us to reach this issue, but rightness is rightness. How do you respond to the rightness arguments that have been advanced today by Mr. McGuire? Well, first of all, here's the district court decision on rightness. Mr. McGuire never availed himself of this permit process, so his claim is unripe. I think it is a district court determination, a factual finding, that he never availed himself of the permit process. Was there anything in the record that perhaps would support a different conclusion, or are we down by the district court's determination of that? Well, the district court goes on to note that there are, well, The oddity is, of course, the district court was not the trial court. The bankruptcy court was the trial court and made the initial findings. So the district court, as I understand it, didn't take any evidence on this, unless you can correct me on that. Excuse me, the district court didn't make any, I mean, the district court didn't take, the district court was looking at a cold record just as we are, right? That's correct. The district court determined that he didn't avail himself of the permit process, and so his claim is unripe. If that is a mixed question of, The bankruptcy court found otherwise, correct? The bankruptcy court found otherwise. So how do, what do we do now? So I, so you're saying, well, I think, I mean, you argued that we should, I gather you were arguing we should defer to the fact finder, but in fact the fact finder was the bankruptcy court. Well, but the bankruptcy, this is a non-core proceeding, so the bankruptcy court makes findings and recommendations to the district court. This isn't a review of the bankruptcy court decision, it's a review of the district court decision. Correct. But we are in the same position as the district court was, because we're looking at the record itself, the cold record. So what in the record supports that conclusion? The burden is, was on the, on McGuire to show that he availed himself of this permit process, and the only thing that really, that there really was in the record was a, supposedly a conversation with somebody where he drew a picture, which the BIA employee did not remember. There are repeated letters to the, to McGuire telling him that he is to submit documentation, to submit something to show that he is, the February letter and the August letter from OnSpot, from the superintendent from BIA, specifically say submit documentation, give us something. And those repeated statements put him on notice that he, purporting to make phone calls that nobody, that there's no record of any phone calls, just testimony of phone calls. Okay. Let me stop you right there. The rightness doctrine implies that somewhere down the road, the case, if something is pursued, will become ripe, right? Right. Okay. So what could Mr. McGuire do today that would make the case right? Well, today he's not on the lease anymore, so he's not in that position. But at any point he could have. So really isn't your argument a failure to exhaust, which would be basically an affirmative defense rather than a jurisdictional argument? Well, that's. Because if you're saying, if it's right. Because it's not, it couldn't be right anymore. His damages are concrete now. There's no action that the agency could engage in to give him the relief. But the point is, it wasn't ripe when he brought it. I mean, that's why the district court and the bankruptcy court didn't have jurisdiction. The question isn't really now. Well, I guess when he brought it, he wasn't on the lease. Yeah, it's right now. You have to concede it's right now. Anymore. Right. It was never ripened. I don't know, I haven't been in a situation where the property interest doesn't exist anymore in that sense. But you don't have a taking claim as long as you have not given the government an opportunity to allow you to use the property right that you say you don't have. And it might go to where the district court also talked about if it's not exactly ripeness causation. I mean, it's not the government's fault. Right. I mean, I think all that's an affirmative defense. But ripeness is a jurisdictional question. I don't have the answer to that. Right. I understand. I'm not sure that. So educate me once again. You have a situation where there's a finding by the bankruptcy court which had the opportunity to actually take testimony or create a record, and then you have a recommendation and you have the district court make some opposite determination on that finding based upon the cold record. What is the standard of review that we have to embrace here now? Is it a date over? We look at the entire record and make our own separate determination? Do we give deference to any of these prior determinations? No. I think the district, because it is a decision of the district court. I mean, deference to determinations of fact, it's still a clearly erroneous determination. It's clearly erroneous, isn't it? Yes. That's yes. I believe so. As to whom, though? I mean, the district court didn't give any deference to the fact finding of the bankruptcy court. I don't know that it did. I'm sorry. This is an area of the bankruptcy situation, but my understanding is that the whole difference between a core proceeding and a non-core proceeding is that in the non-core proceeding, basically, we are getting a district court determination. The bankruptcy court makes recommendations. And so what we are dealing with is that most of the time, if it's a non-core and the district court, if the district court withdraws the reference, then the district court does all the work itself. It's a bit odd for it to. But in any event, I mean, the district court here is correct, regardless of. The question of whether there was a meaningful application for the purposes of the Rightness Doctrine is you have to have what the doctrine calls a meaningful application. Calling up somebody and not getting answers to your phone calls is not a meaningful application. And you have to avail yourself of that. You have a burden to try to ripen this claim if you want to sue the government for a taking. I mean, here they hired a lawyer. All they had to do was send one letter or something, at least to show. We do have a letter here. We at least have what appears to be an appeal. It's Mr. McGuire's letter. This is the Exhibit 28 that opposing counsel referred to. It's on page 525 of the excerpts of record. A five-page letter saying, and it concludes by saying, I pray that we can resolve this, trying to explain where he's been through all of this. It's sent to Mr. Ansbach. It's sent to the Western Regional Director in Phoenix. I pray that this problem is resolved quickly. This is an appeal of the decision of the cancellation of the lease. The contention is that this is an appeal from nothing, because he never filed the initial application, so you can't appeal from a denial of nothing. No, this is an appeal from the cancellation of the lease. He never appealed. See, this is the whole problem. He never appealed. He says appeal decisions concerning condemnation of bridge. Yes, yes, yes. He did not.  Because, actually, that wasn't internally appealable, and he was advised in the November. Well, this doesn't look like ñ I'm not sure this was drafted by a lawyer. It is not on the letterhead, and it is signed by Mr. McGuire personally. You kind of wonder, in a $5,000 bridge case, whether we needed sort of the kind of precision that we ordinarily demand in other kinds of legal endeavors. I'm just saying, look, I know the government, this appeal and the one to the tribe were always, he was saying, the bridge wasn't unsafe, you have to leave it. There's nothing in any of these documents that say I tried to get a permit to put in a bridge, and you wouldn't let me. But the damage comes from the condemnation of the old bridge, right? Well, the damage comes ñ I mean, if the old bridge had not been condemned, none of this would have happened. You would have had an unsafe bridge, perhaps. But there's no question that the government could do that. The question is whether the government can deny him access. Whether that's a taking. No, it's whether the access ñ Or his compensation. Not the condemnation of the bridge, but whether his loss of access is the taking. I mean, there's no question that the condemnation of the bridge could occur and was not a taking. It's whether he can get access. And none of his ñ there's nothing in the record to show that he ever, except for his own testimony, which is not ñ doesn't agree with the testimony of the government agents, that he tried to get to build a new bridge. Just the following person was able to put in some plans and was able to get approval to build a bridge. But analytically, let me slow you down for a second. It seems to me that the damages flowed from the condemnation of the bridge. That that was without ñ if the bridge is there, there's no problem. He was upset that the BIA was taking his bridge away. And he didn't necessarily want to build a new bridge for whatever reason. So by taking the bridge and denying access, that's the problem. Now, it seems to me maybe a measure of damages might be that he could have mitigated by applying for a new bridge. But, I mean, the initial damage that flowed, it seems to me, is from a governmental ñ arguable governmental taking. Go ahead. Well, I guess the question is causation. They are alleging he couldn't access the northern part of the property. It's not his bridge. It's not like somebody took his house or something. The question is could he get to the northern part of his property. And the government's condemnation of the bridge still left available a way to get access. But the bankruptcy court made a factual determination that he did not have proper access. No, I'm saying because of the bridge, because he could put in a replacement bridge. And the district court ñ so the district court made two findings related to the question of putting in the new bridge, one of which was that it wasn't ripe because he hadn't ever applied to put in a new bridge. And one was that he caused his own problem by not seeking to build a new bridge. So there's a causation problem as well. But that may not be a ripeness issue particularly. Well, ripeness or causation if it's not ñ I don't know the answer on ñ No, it's a difficult analytical case for a lot of different reasons. But I would say then that if the ripeness question is difficult for the court, is not jurisdictional, then we definitely should win on the question of the sovereign immunity waiver. I'd like to point out Section 106, the immunity waivers there are very narrow and very specific. They are not ñ it's not a little Tucker Act waiver. They are waivers for compulsory counterclaims, for claims that are within the estate, and counterclaims with setoffs only to the amount that the government has a claim for in the estate. In fact, this court in the case Town and Country that's cited briefly in our brief, held under a prior version of 106 that the government did not have to file a proof of claim to invoke the 106, for the 106 waiver to be invoked. And Congress changed the law to require a proof of claim be filed. Congress is very serious about those sovereign immunity waivers being narrow and specific. And that is completely in tension with any theory. Do the United States file any sort of proof of claim in this case, taxes or otherwise? My understanding was that it did not. I'm just happening to look at the record. I think there was a small IRS claim of up to $12,000, but that's never been ñ that wasn't the basis for it. No, no. But, I mean, the United States had probably injected itself in some way in the bankruptcy by filing a proof of claim, would be my guess, right? That's immaterial to this case, but I think there could be in this case. I'm just not positive. My understanding previously was that there was not. Okay. You know, this court also, in the Liberty Construction and prior cases, specifically stated with respect to the Tucker Act, that you had to have a jurisdictional grant and an independent waiver of sovereign immunity. And that is the basis for the reasoning underlying the analysis of some of those cases. And it would be ñ I mean, this court needs to think seriously if it wishes to depart from that rule of law, which is correct and which is agreed to by ñ we've cited Third Circuit, Eighth Circuit. You're not interested in hearing me. No, no. I'm thinking about what you're saying. Okay. Numerous, numerous courts ñ I mean, really, quality tooling. And one, I think, bankruptcy court that followed it stands alone on this theory that there is somehow a broad waiver of sovereign immunity in the Tucker Act, based on no language that quality tooling ever cites to or mentions. No rationale that any court has provided and stands in direct contrast to the cases, the Supreme Court cases of Shaw and Rousset. Well, you know, bankruptcy jurisdiction has kind of gone all over the map. And when the Bankruptcy Act was passed in í78, the theory was it had jurisdiction over everything. And the arguments were made at that point that you could conduct state divorce proceedings in bankruptcy. I mean, it was the salad days of the bankruptcy bar, if you will. I mean, that's been trimmed back. But the initial grant in the bankruptcy code was enormous. I mean, the understanding was it was the broadest grant possible of jurisdiction. Marathon Oil changed that. I grant you that the amendments to 106 and others have trimmed back on that. But they aren't off base entirely in saying that Congress initially was really trying to give an enormous, enormous power to the bankruptcy courts. But, Your Honor, nobody, not quality tooling, not the appellants here, maintains that the sovereign immunity waiver is in the Bankruptcy Act. It's in the Tucker Act, which was enacted in the 1800s. If everybody agrees that if there is a waiver here, it has to be found in a statute enacted more than 100 years ago, and far before the Congress expanded the jurisdiction in this bankruptcy proceeding. And there is no ó the rule that of strict construction, limiting the terms to the language of the waiver, all requires that jurisdiction be limited to the court of federal claims. As well as, as I said, the cases of Shaw and Minnesota, which said the waiver says not only when the government may be sued, but where. And rules on that ground. Thank you. My questions and ramblings have taken you over your time, but I appreciate you responding. Thank you very much. Rebuttal. Your Honors, may I approach the ripeness issue first for just a moment? In the excerpts from the record, I believe on pages 55 and 56, you'll see, if I have those numbers right, and I believe I do, that the district court below accepted, concurred with, and adopted the findings of fact of the bankruptcy judge, but reached different conclusions of law on those findings of fact, which does complicate what you do with the facts in the record. So your argument would be de novo is a review of application of a lot of facts? Yes. And that the conclusion of law that flows from that, then, is what we take issue with here. That's the first point. The second point on the question of rightness that I'd like to address is this. There isn't any evidence in the record that Mr. McGuire filled out an application form, because there is evidence in the record that there was no application form. He did what he was told to do, and he made a record of doing that. This is a case in which we have a Federal agency's office in a remote location on the west edge of Arizona in Parker against the river, and they didn't have or use the forms that we might wish they would have had, so he did his best. And that's undisputed? There's no factual issue in that regard? The only dispute about that, Your Honor, is, as counsel said, that one Federal agent said, I don't remember that. Mr. McGuire was pointed on pages 254 through 258 of the exceptions to the record about that. Does the record indicate how the bridge was ultimately constructed? In other words, through what application or non-application process? No, it doesn't. I don't believe it does, Your Honor. I think that happened after Mr. McGuire was gone and it was too late. But that brings me to the point I'd like to close with, which is also really a matter of fact here, and that is that the record discloses that Mr. McGuire very clearly leased this land to use it for alfalfa land. His damages evidence illustrates that that particular use requires a great deal of financial investment in this particular part of the world, unlike upstate New York, where alfalfa is grown under much different circumstances. When he could no longer farm this ground for alfalfa because of the volume of the crop harvested, he tried to mitigate his damages and plant wheat, and he tried to negotiate an amendment to his lease on the basis that he should have a lower lease payment because he couldn't have access to use the land for the intended purpose. He made all of those efforts in addition to trying to get permission to build a bridge. Those are documented in the record, and those aren't disputed. Mr. Counsel, I'm looking at Exhibit 28 on page 525 that you referred me to in your opening argument. What was the government's response to that letter? My best recollection, Your Honor, is that there was no response. That letter was filed on August 18th. There's an August 19th, so a letter written the following day by Mr. Kruger, who was his local counsel. Yes, sir. And there does appear to be a government response to Mr. Kruger. It's a very bureaucratic response, basically telling him he hasn't filed his letter to all the right places. Yes. I don't think there was a separate response at all to Mr. McGuire's letter. So what Mr. McGuire titled Notice of Appeal was never responded to by the government? I don't think there's a response in the record, and I don't think we had, I don't think we withheld an exhibit. So I think the answer is that Mr. McGuire had no response. Could I ask the government counsel, is there a response to the August 18th letter? It says Notice of Appeal right at the top. Appeal process. Well, I know, yes, the appeal process was constant. I don't know if anybody responded specifically to his letter, but the letters on his lawyer became the vehicle for that appeal, and the appeal was resolved. It was not canceled. It was an appeal. We couldn't even get any thoughts of an interim process. That's not an appeal. Asking somebody else for information about the immigration crisis. Precision appeal and interim cancellation of the lease, which was resolved. Does this eventually go to the I.B.L.A., or in the Interior Board of Appeals, it goes through the BIA? I don't think that it went that far. It ended before then, I believe, Your Honor. So it could have gone to, it could have been taken as far as the, I.B.L.A. is not the term, yeah, okay. Well, really what Mr. McGuire did was challenge the bridge decision and the termination of the lease, and what his lawyer did was take up the matter of the termination of the lease. And then he went into bankruptcy because, frankly, it wasn't going to help him in time anyway. Refresh me. Was this a Chapter 7 or Chapter 11? It was originally an 11. It converted to a 7. And then did he, was a trustee, so a trustee was eventually appointed and remains in the case? Yes, although the case is essentially dormant for this purpose, of course. It may have been administratively closed pending this. I think that's correct. All right. Any further questions? It's an interesting case. Thanks for letting us. It is an interesting case. And thank you all for indulging us, and especially me, with my musings. So the case just heard will be submitted.
judges: Thomas, Bybee, Block